**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No. 26-CR-137 (JMC)** |
| | : | |
| **v.** | : | |
| | : | |
| **DEMOND BARNES,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant, Demond Barnes (hereinafter referred to as "defendant" or "BARNES"), be detained pending trial pursuant to 18 U.S.C. § 3142(d)(1)(A)(iii) (on probation or parole); and 18 U.S.C. § 3142(f)(1)(E) (firearm/other dangerous weapon). In addition, as outlined in the defendant's Pretrial Services Agency (PSA) report, the defendant has four (4) criminal convictions – including for several significant felony related convictions, sixteen (16) prior arrests, and one (1) prior bench warrant. Thus, there is no condition or combination of conditions that will assure the safety of the community or the defendant's return to Court if released. Thus, the government requests that the Court order the defendant detained pending trial.

Accordingly, the government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**Procedural History**

The defendant is now charged by Indictment with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding

One Year, in violation of 18 U.S.C. § 922(g)(1). His initial appearance was held on June 16, 2026, and an Initial Appearance and Detention Hearing are scheduled for July 8, 2026.

**Background**

On May 15, 2026, at approximately 8:06 p.m., Officer Moreno, Officer Herreros and Officer Severino, members of the Task Force in conjunction with the U.S. Marshals, DEA, and Metro Transit Police Department, were working the midnight tour of duty in full uniform, wearing external vests bearing "US PARK POLICE," "US MARSHAL," "DEA POLICE," and "METRO POLICE." Members were operating marked police cruisers equipped with emergency lights and sirens.

Officer Moreno observed a White Volkswagen Jetta in the 700 block of Florida Avenue, NW with heavy dark tinted side windows. Officers conducted a traffic stop on the same block and approached the vehicle. The vehicle was observed displaying a DC license plate number JU2342. Officer Moreno observed Barnes, Demond Christopher ("BARNES"), who was the driver and only person in the vehicle.

Officer Moreno approached the vehicle and advised BARNES the reason for the traffic stop (heavy dark tinted side windows). Officers instantly noticed THC wax in plain view. Officers stepped BARNES out of the vehicle and placed him under arrest for possession of THC wax, which is a controlled substance in the District of Columbia.[1]

[1] According to the District of Columbia Code, Marijuana is defined as the following: "Leaves, stems, flowers, and seeds of all species of the plant genus Cannabis, whether growing or not." *See* District of Columbia Code § 48-902.06. District of Columbia Code further describes what marijuana does NOT include: "The term "marijuana" does not include the resin extracted from any part of the plant, nor any compound, manufacture, salt, derivative, mixture, or preparation from the resin, including hashish and does not include the mature stalks of the plant, fiber produced from such stalks, oil, or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture or preparation of the mature stalks, fiber, oil, or cake, or the sterilized seed of the plant which is incapable of germination." *Id*.

Once BARNES was asked to step out his vehicle, officers noticed a big bulge in his waistband and asked if it was a firearm he had. BARNES stated "yes" and said that he did not have a license to carry. Officer Moreno then recovered a black firearm from BARNES' front waistband, which was captured on body worn camera footage. The firearm recovered by Officer Moreno is as follows: Make: Glock; Model: Glock 26; Serial #: UPX346; Color: Black; Caliber: 9 mm luger; Magazine: 10 round; Ammunition: 9 rounds in magazine, 1 in chamber. *See* Figure 1 below.




***Figure 1 Firearm recovered from Barnes waistband***

At the time of recovery, the pistol appeared to be fully functional, is designed to expel a projectile by the action of an explosive and has a barrel length of less than 12 inches and is capable of being fired by use of a single hand.

A Crime Research Specialist (CRS) was utilized for the query of the firearm registration, which yielded negative results to being registered in the District of Columbia. CRS was also

utilized for the query of BARNES having a concealed carry permit in the District of Columbia to which the search generated negative results. BARNES was additionally queried through law enforcement databases for a concealed carry license and registration status within the District of Columbia. These searches generated negative results.

A search of the vehicle was conducted by the Officers for further firearm and narcotic findings. During the search of the vehicle, Officers recovered 1 orange pharmaceutical bottle containing 26 pills weighing 8.28 grams which was tested via a narcotic field test kit and yielded a positive color reaction for the presence MDMA (ecstasy). Officers also recovered a total of 6 THC jars weighing a total of 233.09 grams. Officers recovered 7 oil cartridges containing yellow oil labelled containing THC oils. This was all recovered by Officers in a black bag which was on the rear passenger floorboard. Officers recovered 2 electronic scales in the center console. Officers also recovered in the center console a plastic baggie containing white powdery and rocklike substance weighing 3.72 grams which was tested via a narcotic field test kit and yielded a positive color reaction for the presence of cocaine base. In the center console Officers also recovered $176, all in $1 bills. In between the money, a crumbled up $1 dollar bill contained a white powdery substance which was tested via a narcotic field test kit and yielded a positive color reaction for the presence of cocaine base. *See* Figure 2 below.



***Figure 2 shows all items recovered from Barnes and his vehicle***

Furthermore, Officers recovered 1 large extended Glock magazine in the trunk of the vehicle containing 33 rounds inserted into the magazine.

A violation of tint restriction (NOI #296543612) was issued to BARNES. Officer Moreno conducted a tint measure check with the U.S. Park Police Department issued side tint measurement device (Laser Labs Enforcer II), which yielded a tint measure check of 14%. Since the vehicle is registered in the District of Columbia, the vehicle must be no less than 70% side tints. *See* Figure 3 below.




***Figure 3 Tint Violation Meter Photo***

A WALES/NCIC check of the DC tag JU2342 on the vehicle came back registered to BARNES. A WALES/NCIC check of BARNES revealed he is a felon in possession and cannot possess, control, or purchase firearms nor ammunition.

There are no firearms or ammunition distributors in the District of Columbia, therefore, the firearm and ammunition must have travelled in interstate commerce.

**Legal Authority and Argument**

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will

prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *See Smith*, 79 F.3d at 1210; *Williams*, 798 F. Supp. at 36.

Therefore, a review and understanding of the facts and circumstances in this case reveals that there are no conditions, or combination of conditions, that would ensure the safety of the community or the defendant's return to Court if released. Consequently, the defendant should be held pending trial.

**The Bail Reform Act Factors All Favor Detention**

The United States seeks detention pursuant to 18 U.S.C. § 3142(d)(1)(A)(iii) (on probation or parole); and 18 U.S.C. § 3142(f)(1)(E) (firearm/other dangerous weapon). *See* PSR ECF No. 4.

The Bail Reform Act, under 18 U.S.C. § 3142(g), enumerates four factors that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.

The weight of the evidence should be considered equally with the other § 3142 factors. For example, in *United States v. Blackson*, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." No. 23-CR-25 (BAH), 2023 WL 1778194, at *8 (D.D.C. Feb. 6, 2023). Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10;

*aff'd,* No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023); *see also United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang* in evaluating the four factors.

Each of these factors weighs in favor of pretrial detention in this case. *See* 18 U.S.C. § 3142(g). A review and understanding of the facts and circumstances in this case should lead the Court to conclude that there are no conditions or combination of conditions that would assure the safety of the community. *See* § 3142(e)(1).

**A. The Nature and Circumstances of this Offense Merits Detention.**

The first factor to be considered is the nature and circumstances of the offense charged. This factor weighs in favor of detention. The defendant is charged, *inter alia,* with unlawfully possessing a loaded firearm—a serious crime that carries up to fifteen years in prison under § 924(a)(8). *See, e.g., United States v. Gassaway*, No. 21-CR-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-MJ-181 (BAH), 2020 WL 5642288, at *2–3 (D.D.C. Sept. 21, 2020) (making same observation); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence").

As outlined more fully *supra,* once BARNES was asked to step out his vehicle, officers noticed a big bulge in his waistband. When they asked if it was a firearm he had, BARNES stated "yes" and that he did not have a license to carry. Officers then recovered a firearm from BARNES' waistband – all of which is captured on body worn camera footage. The firearm was identified as a Glock; Model: Glock 26; Serial #: UPX346; Color: Black; Caliber: 9 mm luger; Magazine: 10 round; Ammunition: 9 rounds in magazine, 1 in chamber. Indeed, the evidence outlined above

shows that defendant BARNES possessed this loaded firearm while on supervision on another case – as outlined more fully below.

Judges of this Court have warned against discounting the inherent danger associated with loaded firearms. *See, e.g.*, *Blackson*, 2023 WL 1778194, at *7–8 (asserting that the absence of evidence of "use" "does little to detract from" the danger posed by a firearm, including when it is "at the ready, on his person, and easily within reach"), *aff'd,* No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). Here, the defendant had direct access to a loaded firearm on his person while in our community.

The possession of loaded firearms by convicted felons is extremely dangerous. The increase of urban shootings and violent crimes involving firearms has shown the negative impact that the unregulated flow of firearms can have on a community. Thus, as a threshold matter, the defendant's possession of a loaded handgun placed the community at risk. Significantly, the defendant's possession of this loaded firearm and narcotics alone presents a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public."). As outlined *supra,* Judges of this Court have warned against discounting the inherent danger associated with loaded firearms. *See, e.g.*, *Blackson*, 2023 WL 1778194, at *7-8 (noting that the absence of evidence of "use" "does little to detract from" the danger posed by a firearm "loaded with 19 rounds of ammunition in an extended magazine, . . . more ammunition than the gun was originally manufactured to carry, thereby increasing its potential to do greater harm" and placement "at the ready, on his person, and easily within reach"), aff'd, *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023); *see also United State v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020)

(holding that a defendant should be detained pretrial in part because "the firearm recovered from the defendant's person had a round already chambered, making the circumstances even more troubling"), aff'd (D.D.C. Nov. 5, 2020). The firearm recovered from BARNES had many of these troubling characteristics, and more broadly, the firearm was loaded and ready to fire when it was recovered.

Furthermore, the defendant could not have possessed the firearm legally due to his status as a felon, and therefore had an illicit source for the firearm, further demonstrating the potential dangerousness associated with the defendant possessing a loaded firearm in our community. Thus, the first factor weighs in favor of detention.

**B. The Weight of the Evidence Against the Defendant is Strong.**

The second factor to be considered is the weight of the evidence against the defendant. This factor also weighs in favor of detention. Here, Officers recovered the firearm from BARNES' waistband, the events of which are all on body worn camera. Thus, there can be no viable argument which would rebut the weight of the evidence against this defendant.

The weight of the evidence should be considered equally with the other § 3142 factors. Notably, in *Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow

*Blackson* and *Zhang*; this factor should be given no less weight than any other factor.

Indeed, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194, at *10. This is such a case, and the defendant should be detained pretrial.

**C. The Defendant's History and Characteristics Merit Detention.**

The third factor to be considered is the history and characteristics of the defendant. This factor weighs heavily in favor of detention as the defendant has a history of committing significant criminal offenses and related firearm offenses and violating the terms of his previous release conditions. *See* PSR ECF# 4 at 2-6. In fact, while possessing a firearm and suspected narcotics in this case, the defendant was on supervision for his previous Superior Court conviction for Unlawful Possession of a Firearm (Prior Conviction), and had been in non-compliance and escape from a half-way house placement during various periods while released causing the defendant to be placed in custody.[2] *Id*. at 2-3. Defendant Barnes was also convicted of Robbery While Armed in 2014, where he was sentenced to 60 months, with Supervised Release for 5 years and he was convicted of Carry Pistol W/O/ Lic-Outside Home/Business in 2014, where he was sentenced to 10 months/suspended and three years of Supervised Release. *Id*. at 3.

---

[2] Additional information obtained from Bureau of Prisons (BOP) and D.C. Jail and Community Corrections System (JACCS) records indicates the defendant's probation was revoked and the defendant was resentenced on 11/10/2021. On 01/27/2022, the defendant was transferred to the Bureau of Prisons.

On 10/05/2023, the defendant escaped from the Voices of America Halfway House prior to the commencement of supervised release. The defendant subsequently served a term of imprisonment and was released from BOP custody on 05/01/2024 to begin a period of supervised release. *Id*. at 3.

The defendant's history of violating his release conditions in cases involving significant convictions demonstrates he is unable to follow conditions set by the Court and will not do so in this instant case. In addition, as evidenced *supra*, the defendant is also a flight risk. Finally, the fact that the defendant possessed a loaded firearm while on release status for convictions for a prior firearm in our community shows that he does not respect the law and will disregard the Court's Orders at any time. Fundamentally, the Court should have no faith that BARNES will follow the Court's orders or not abscond from justice if released prior to trial. This combination of convictions and failure to comply with even the simplest of instructions makes the defendant's history and characteristics weigh heavily in favor of pretrial detention.

**D. The Defendant Presents a Danger to the Community.**

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, similarly weighs heavily in favor of detention. The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This requires the court to make a "forward looking determination" about the defendant's risk of danger to the community, keeping in mind that detention may be justified even if the court does not explicitly find that the defendant is a risk of committing acts of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

Here, the defendant has demonstrated in the instant offense that he remains a risk to the community. Significantly, BARNES possessed a loaded 9mm semi-automatic pistol that was loaded with one round in the chamber and nine rounds in the attached magazine. Simply stated,

the defendant is a threat to the community as evidenced by his recidivism and his failure to obey court orders. Accordingly, this factor weighs in favor of detention.

Importantly, the defendant's possession of this firearm alone presents a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public."). Finally, the defendant's previous encounters with the criminal justice system and previous firearm related convictions did not deter him from possessing a loaded firearm in the instant case. Moreover, BARNES' current court supervised release status did not deter him from possessing a loaded firearm. Simply stated, the defendant is a danger to our community.

Here, Court supervision is insufficient to prevent the defendant from possessing firearms and ensure community safety, as evidenced by his prior noncompliance with release terms. Because no condition or combination of conditions of release are adequate to protect the community from this defendant or the defendant's return to Court if released, this Court should detain him pending trial.

## Conclusion

The government respectfully requests that the Court detain the defendant pending trial.

Respectfully submitted,
JEANINE FERRIS PIRRO
United States Attorney

*/s/ Emory V. Cole*

EMORY V. COLE
PA Bar No. 49136
Assistant United States Attorney
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Telephone: 202-252-7692
Email: emory.cole@usdoj.gov